DEAN WITTER REYNOLDS INC., Plaintiff,

v.

Marilyn Kay FERNANDEZ, etc., et al., Defendants,

and

Gilbert McDonald and Peter Paul, Additional defendants on Cross-Claim.

No. 79–112–CIV–CA.

United States District Court, S. D. Florida.

Dec. 10, 1979.

---

**2.** *See also* Official Comment 5 to 12A P.S. § 2–312.

Fine, Jacobson, Block, Klein & Colan, P. A., Miami, Fla., for Peter Paul.

Irving Weinsoff, Miami, Fla., for Fernandez.

Mercer K. Clarke, Miami, Fla., for plaintiff.

Michael Krinsky, New York City, co-counsel w/Ira Kurzban, Miami, Fla., for Banco Nacional de Cuba and Cubaexport.

Shelby Highsmith, Miami, Fla., for Karl Fessler and Gilbert McDonald.

Martin R. Raskin, Sp. Atty. (Treasury Office of Foreign Assets), U. S. Dept. of Justice, S. E. Regional Strike Force, Hirschhorn & Freeman, P. A., Miami, Fla., for Art Castro.

## MEMORANDUM OPINION AND ORDER ON MOTIONS TO DISMISS CROSS-CLAIM AND TO SET ASIDE DEFAULT

ATKINS, District Judge.

THIS CAUSE came before the Court on several related motions challenging the validity of "cross-claims" asserted by two defendants, Banco Nacional de Cuba and Empresa Cubana Exportadora de Alimentos y Productos Varios. Peter Paul, named an "additional defendant" on cross-claim, moves to dismiss the cross-claim for lack of subject matter jurisdiction. Gilbert Lee McDonald, also named as an "additional defendant," moves to set aside the default which has been entered against him, and also moves to dismiss the cross-claim for reasons substantially similar to those raised by Peter Paul.

Having reviewed the record, and being otherwise duly informed, it is hereby

ORDERED AND ADJUDGED that the default entered against McDonald be set aside for good cause shown. It is further

ORDERED AND ADJUDGED that the motions by Paul and McDonald to dismiss the cross-claims against them be denied. The reasons for this ruling follow.

### I. FACTUAL BACKGROUND

In December, 1978, defendant on interpleader, Karl Fessler, deposited approximately eight hundred forty-five thousand dollars ($845,000.00) with Dean Witter Reynolds. These funds are the subject of a blocking order issued by the United States Department of Treasury pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515. On January 10, 1979, Dean Witter Reynolds, as plaintiff, commenced this interpleader action against various defendants, alleging jurisdiction under Rule 22, 28 U.S.C. § 1335, and 28 U.S.C. § 1332(a)(2). Defendants Karl Fessler, Marilyn Kay Fernandez, Banco Nacional de Cuba (hereafter Banco Cuba or Cuban party) and Empresa Cubana Exportadora de Alimentos y Productos Varios (hereafter Cubaexport or Cuban party) have filed answers to the interpleader complaint. On April 6, 1979, the Cuban parties filed their "cross-claim and complaint" against Karl Fessler, Tanvest N.V., and two "additional defendants," Gilbert McDonald and Peter Paul. The record indicates that service of process of the cross-claims was returned executed in Florida as to Karl Fessler and

Peter Paul. Fessler, who is a citizen of the Federal Republic of Germany, was served while in the custody of the United States Marshal on criminal charges.

The cross-claim alleges four counts: Count I alleging fraud, Count II alleging unjust enrichment, money had and received, conversion and constructive trust, and Count IV alleging breach of warranties. These three counts name Fessler, Paul, McDonald and Tanvest N.V. as parties in opposition. Count III, alleging breach of contract involves only Fessler, McDonald, and Tanvest N.V. The counts arise out of an allegation that the Cuban parties were defrauded of some eight million, seven hundred seventy five thousand dollars ($8,775,-000.00) on a letter or letters of credit used to finance a purchase of coffee which was never delivered. The pleadings and memoranda allege that the $845,000 deposited by Fessler with Dean Witter Reynolds is a portion of the more than eight million allegedly misappropriated.

Jurisdiction over the cross-claim is generally alleged to exist by virtue of 28 U.S.C. §§ 1330, 1331, 1332(a) and 1335.

Defaults were entered by the Clerk of the Court against McDonald and Paul on June 19, 1979. Upon motion by Paul, his default was vacated. Paul has now filed a motion to dismiss the cross-claim; McDonald filed a similar motion, accompanied by a motion to set aside the entry of default.

## II. THE ARGUMENTS PRESENTED BY THE PARTIES

The respective memoranda of the Cuban parties, McDonald, and Paul show extensive confusion as to the jurisdictional basis of the cross-claims. Both Paul and McDonald devote a portion of their arguments to the proposition that if the cross-claims are based on a Rule 14 (Federal Rules of Civil Procedure) impleader theory, no jurisdiction exists because there has been no allegation of contingent-third party liability. The Cuban defendants wisely concede this argument, recognizing that their separate allegations of Paul's and McDonald's liability, unrelated to their own

liability, are not within the scope of Rule 14. See United States v. Joe Grasso & Son, 380 F.2d 749 (5th Cir. 1967); James Talcott, Inc. v. Allahabad Bank Ltd., 444 F.2d 451 (5th Cir. 1971), cert. denied, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253.

A second proposition expressed in the motions to dismiss is that the present interpleader action is based on 28 U.S.C. § 1335 and that case law interpreting the statute has limited the jurisdictional scope to the amount or res interplead. In support of this theory, Paul cites State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) where the Supreme Court stated that a statutory interpleader action could not be used to solve all problems arising out of a vehicle collision and therefore an injunction of pending state proceedings must be modified so as not to exceed the scope of the insurance policy proceeds interplead.

As a third point, Paul assets that jurisdiction over the cross-claim cannot rest on a notion of ancillary jurisdiction because the cross-claim and interpleader lack the required similarity in either transactions or property. In support of this, Paul relies on the recent case of Cherokee Insurance Company v. Koenenn, 536 F.2d 585 (5th Cir. 1976).

The Cuban parties' reply memoranda urge jurisdiction over the cross-claim is obtained under Rule 13(g) and (h) (Federal Rules of Civil Procedure). They allege that the plaintiff's action against the original defendants was maintained without resort to 28 U.S.C. § 2361, the special service of process provision for statutory interpleader actions. Therefore, they maintain, Rule 22 (and not 28 U.S.C. § 1335) is the appropriate basis of the original action's jurisdiction, and case law interpreting Rule 22 has permitted the assertion of cross-claims. Davis v. Prudential Insurance Co., 331 F.2d 346 (5th Cir. 1964). The Cuban parties urge the full scope of Rule 13(g) is available in interpleader actions where Section 2361 has not been used to gain in personam jurisdiction, and their conclusion is that ancillary juris-

diction over the cross-claim does exist.[1] Once ancillary jurisdiction over the cross-claims asserted against Fessler and Tanvest N.V. is found to exist, argue the Cuban parties, it is a simple matter to determine that Paul and McDonald have been properly joined as "defendants" on cross-claim pursuant to Rule 13(h).

## III. ANALYSIS

■ On February 9, 1979, this Court entered an order of interpleader, granting a motion for temporary injunctions as to any other pending proceedings. In doing so, the Court endeavored to satisfy both the equitable requirements of Rule 22 and the statutory requirements of Section 1335 and its related provisions. The injunction was found to be necessary to perfect the Court's equity jurisdiction over the interpleader action under Rule 22.[2] While a requirement that the "fund" be deposited with the Court is normally associated with statutory interpleader, the Court has discretion to make such an order under Rule 22. *See e. g., Emmco Insurance Co. v. Frankford Trust Co.,* 352 F.Supp. 130 (D.C.Pa.1972). Dean Witter Reynolds raised no objection. Thus, the interpleader action has come to this point without a specific finding that jurisdiction rests solely on either Rule 22 or statutory interpleader. The party alignment is capable of satisfying the diversity requirements of either statutory interpleader (requiring "minimal diversity" as between any two claimants to the fund) or Rule 22 (requiring "complete diversity" between the interpleader-plaintiff on one side and on the other, all of the defendants brought in by interpleader).

At this point it is important to note the limited scope of the present analysis. Inquiry into the record shows that local service of the original interpleader action was effected and an answer filed by Marilyn Kay Fernandez.[3] Fessler filed an answer to the interpleader complaint. Hava/Cu Enterprises, Turnbull Associados, S.A., and Tanvest N.V. were named as defendants in summons issued to the Secretary of the State of Florida pursuant to Florida statutes providing for substitute service on non-residents. Although Tanvest N.V. was also the subject of substitute service of the cross-claim, and the record discloses that the summons was returned executed by serving Fessler (under prison custody in Florida) as president of the corporation, no answer has been filed nor default taken. Thus, this opinion does not address the validity of the cross-claim as to Tanvest N.V., except to note that the record indicates that the provision for nationwide service of process in statutory interpleader actions was not utilized. Upon learning that Gilbert L. McDonald was described as a fugitive by the Miami, Florida Field Office of the Federal Bureau of Investigation, the Cuban parties served their cross-claim on the Secretary of the State of Florida and sent a copy of such process to McDonald's last known Florida address. The memorandum accompanying McDonald's challenge to the default taken indicates that he does not contest the method of service of process, but rather the existence of any jurisdiction over an outside person in this interpleader action.

The Cuban parties appeared voluntarily in response to the Court's order of February 9th stating that all parties claiming an interest in the property should file their claim within 60 days. Again, extraordinary service provisions were not utilized.

---

1. Banco Cuba and Cubaexport further suggest that the use of Rule 13(g) in a statutory interpleader action even when extraterritorial service of process has been used is not entirely foreclosed. *See* 5 Wright & Miller, *Federal Practice and Procedure: Civil,* § 1715 at 451–544; 3A Moore, *Federal Practice,* ¶ 22.15.

2. The Court need not have addressed these equitable principles if Section 1335 was the

controlling jurisdiction basis as a related section expressly provides the power to enjoin other pending proceedings whether in state or federal court. 28 U.S.C. § 2361.

3. Although a claimant to the fund, Fernandez is not a party to the cross-claim dispute addressed herein.

In light of the foregoing, this Court finds that as to the parties named to the interpleader action and the cross-claims, the nationwide service of process provision associated with 28 U.S.C. § 1335, the Federal Interpleader Act, was not utilized. In so finding, the Court does not express a viewpoint as to the validity of service on Tanvest N.V. or the other foreign corporations.

In order to determine the validity of the cross-claims as against Paul and McDonald, it will first be necessary to resolve the propriety of the cross-claim against Fessler, an original defendant to the interpleader action. *Compare* Rule 13(g) with 13(h).

Paul's and McDonald's arguments that the scope of jurisdiction over this case cannot exceed the funds interplead rely on cases which have interpreted Section 1335 actions. *Tashire, supra*, 386 U.S. at 535, 87 S.Ct. 1199; *Aetna Casualty and Surety Co. v. Ahrens*, 414 F.Supp. 1235 (S.D.Tex.1975); *Travelers Indemnity Co. v. Greyhound Lines, Inc.*, 377 F.2d 325 (5th Cir. 1967) (per curiam), *cert. denied*, 389 U.S. 832, 88 S.Ct. 101, 19 L.Ed.2d 91 (1968). These cases must be analyzed in light of the proposition asserted by Paul and McDonald. In *Tashire*, it was found that an insurance company interpleading claimants under a $20,000 insurance policy had properly invoked the interpleader jurisdiction under Section 1335. However, the Supreme Court refused to allow the trial court to enjoin cases involving other claims arising out of the same vehicle collision, where such claims would involve not just the liability of the plaintiff-insurance company, but rather the individual liability of the various tortfeasors, including the plaintiff's insured. "In these circumstances, the mere existence of a fund cannot, by use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund." *Tashire, supra*, 386 U.S. at 534, 87 S.Ct. at 1205.

At another point, the Supreme Court stated, "[t]o the extent that the District Court sought to control claimant's lawsuits against the insured and other alleged tortfeasor's, it exceeded the powers granted to it by the statutory scheme." *Id.* at 535, 87 S.Ct. at 1206. Thus, the case stands for the proposition that the use of the Court's injunctive powers under Section 2361 for statutory interpleader cases cannot be so extended as to require cases involving separate claims of liability to be stayed pending the outcome of a single, $20,000 insurance policy-liability determination. Often cited is the *Tashire* language that an interpleader was never intended to perform the function of an "all-purpose 'bill of peace.'" *Id.* But, such language should be construed in the light of the holding of the case which places strictures on the scope of the injunction over other pending actions—and not read as an absolute pronouncement that a federal court, entertaining an interpleader action meeting the criteria of Rule 22, is without power to consider cross-claims exceeding the scope of the interpleader fund. As stated by Professors Wright and Miller, "[a]t most, the *Tashire* language might be read as preventing cross-claims seeking to establish liability in the context of a mass tort rather than as an across-the-board proscription against cross-claims in interpleader actions." 5 Wright & Miller, *Federal Practice and Procedure: Civil*, § 1715 at 453. Unlike the mass tort of an automobile accident, where the liability of plaintiff-insuror A as against claimants B, C, D may have few common elements with the liability of B as to C, D and even outsider E, I am faced in this case with allegations that the liability, if any, of Fessler, Paul and McDonald, as to the eight hundred odd thousand *or* as to the eight million arises out of a single scheme of misconduct.

In much the same manner, the rulings in *Aetna Cas. & Sur. Co. v. Ahrens, supra* at 1255, and *Travelers Indemnity Co. v. Greyhound, supra*, must be read as a limitation on the scope of the Court's power to enjoin state court actions pursued against assets other than those interplead and not purely as a statement that the Court is without the power in any interpleader action to entertain properly asserted cross-claims which

exceed the scope of the funds interplead.[4] These cases express a realistic viewpoint that a statutory interpleader cannot become the forced tool for resolution of mass tort controversies; but these cases do not address the question of whether a cross-claim may be properly asserted against a co-defendant in an interpleader action pursuant to Rule 13(g) and against joined defendants pursuant to Rule 13(h).

In light of the foregoing, it is inappropriate to make a categorical statement that the fund limits the scope of the controversy in any interpleader action. Rather the issue to be addressed is whether ancillary jurisdiction exists over the cross-claims raised by Banco Cuba and Cubaexport against Fessler pursuant to Rule 13(g) and if so, does it support the joinder of Paul and McDonald as defendants on cross-claim under Rule 13(h).

■ Rule 13(g) itself states the test for jurisdiction over cross-claims: a pleading may state as a cross-claim "any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action . . . or relating to any property that is the subject matter of the original transaction." While in a limited sense it may be stated that the monies invested by Fessler are the property which is the subject matter of the action, I believe the appropriate analysis is more subtle. The mere existence of the invested funds has not given rise to the need for an interpleader action. Rather it is the ownership or entitlement to possess and control those funds which is at issue.

The facts giving rise to the various claimants' interests in the fund comprise that "transaction or occurrence" which is the subject matter of this interpleader action. For instance, as the Cuban parties' answer admits Fessler's action in depositing the money, their ability to make a claim to the fund will depend on theories of fraud, breach of contract, constructive trust, etc. These are their apparent theories supporting their claim to the fund even apart from their expression of such theories in a formal cross-claim. To limit the parties' cross-claims to the $845,000 interplead makes little sense when the fraud alleged to have taken place is alleged to have resulted not only in the $845,000 but in a loss of some $8 million.[5] The issues which are at the heart of the Cuban parties' claims to the interpleaded funds will apparently involve identical testimony, witnesses and other proof necessary to prove their claim of fraud, etc. as to the entire amount allegedly misappropriated. The test established in Rule 13(g) appears to be satisfied in this preliminary stage of the controversy between the Cuban parties and Fessler, and as such, to permit the cross-claim to go forward against Fessler will "avoid multiplicity of litigation and minimize the circuitry of actions." 6 Wright and Miller, *Federal Practice and Procedure: Civil*, § 1434 at 187 (footnotes omitted).

■ Finding that jurisdiction over Fessler does not depend on nationwide service of process and that the interpleader jurisdiction rests on Rule 22 relieves this Court of the danger of impermissibly extending personal jurisdiction by permitting the cross-claim. Fessler's contacts with Florida take him out of the position of nonresident claimant to an interpleader fund appearing solely for the purpose of litigating his interest in that fund.[6]

4. This Court recognizes that some courts have chosen to interpret *Tashire* in order to support the categorical denial of cross-claims jurisdiction, *see Northern Natural Gas Co. v. Grounds*, 292 F.Supp. 619 (D.Kan.), rev'd in part, aff'd in part, 441 F.2d 704 (10th Cir. 1971). This court, however, is unpersuaded by such a viewpoint. *See Jefferson Standard Insurance Co. v. Craven*, 365 F.Supp. 861, 865 (M.D.Pa.1973); *Allstate Insurance Company v. McNeill*, 382 F.2d 84, 88 (4th Cir. 1967) (Haynsworth, J. dissenting).

5. Although not arising in the context of an interpleader action, the existence of recurring questions in complaint and cross-claims was found to support ancillary jurisdiction in *LASA Per L'Industria del Marmo Societa per Azioni v. Southern Builders, Inc.*, 414 F.2d 143 (6th Cir. 1969).

6. However, even where courts have used nationwide service of process for § 1335 interpleader, at least one court has permitted a cross-claim to exceed the scope of the res. In

In opposition to the above finding of ancillary jurisdiction, Paul and McDonald cite a Fifth Circuit case, *Cherokee Insurance Co. v. Koenenn, supra.* I am unpersuaded by this position. Rather in a controversy arising during an interpleader action, the Fifth Circuit held that a cross-claim by defendant property-buyers against defendant property-sellers alleging cancellation of a promissory note on the property, was insufficiently related to the original interpleader action involving an insurance policy on that property. The court in finding insufficient similarity of property or transaction, implicitly recognized the possibility for ancillary jurisdiction over a cross-claim in an interpleader action if the requirements of 13(g) were met. Thus, the Fifth Circuit held that the test for ancillary jurisdiction over a cross-claim in an interpleader action had not been satisfied on the facts presented. The court did not hold that the test itself was invalid.

Therefore, in light of the above discussion, I find that ancillary jurisdiction over the Cuban parties' cross-claim against co-defendant Fessler does exist. This takes us to the question of whether McDonald and Paul have been properly joined in the suit as parties to the cross-claim.

▮▮▮ Rule 13(h) as amended in 1966 provides for "persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." Thus, the initial criteria, the existence of a properly asserted cross-claim between parties to the original action, is satisfied. *See e. g., United States Agricultural Processors v. Quinonez Hermanos,* 73 F.R.D. 87 (S.D.Fla.1976) (wherein the failure to assert a cross-claim against original co-defendants precluded the joinder of outside persons); *Co-Efficient Foundation, Inc. v. Woods,* 171 F.2d 691 (5th Cir. 1948). The appropriate step would have been for the Cuban parties to move for leave to join Paul and McDonald as parties rather than simply plunging ahead with service of the

cross-claim "complaint." Rule 13(h) permits the joinder of both "necessary" and "permissive" parties; the latter category under Rule 20 has been interpreted as giving the Court considerable discretion "to decide the scope of the civil action and to make such orders as will prevent delay or prejudice." *Arrington v. City of Fairfield, Alabama,* 414 F.2d 687, 693 (5th Cir. 1969). Clearly, Paul and McDonald are not indispensible—Rule 19 parties, but in reviewing the common allegations of fraud, breach of contract, etc. against Fessler, Paul and McDonald, I am satisfied they meet the test of Rule 20 for claims which arise out of the same transaction or series of transactions involving common questions of fact and law. The joinder of Paul and McDonald has not been shown to defeat the diversity elements of either Rule 22 or statutory interpleader. As stated by Professors Wright and Miller, "even though it may be argued that since a Rule 20 party by definition is not necessary for the adjudication of the claim he should not be brought under the court's ancillary jurisdiction, the more persuasive argument is that inasmuch as the claim itself is already within the court's ancillary jurisdiction, the party should be added on the same basis in the interests of maximum judicial efficiency and economy." 6 Wright and Miller, *supra* at § 1436 at 191–192. Therefore, despite the retroactive nature of the procedure employed herein, I am persuaded that Paul and McDonald fall within the scope of persons who may be joined pursuant to Rule 13(h) as parties to an existing cross-claim among co-defendants.

## IV. EQUITABLE CONSIDERATIONS

▮ Having found that the Cuban parties' cross-claims may be raised against Fessler as a co-defendant and against Paul and McDonald as joined parties under Rule 13(h), I nonetheless am compelled to address the practical effect of such rulings on the original interpleader action. Certainly

doing so, the court gave serious consideration to the conflicting judicial policies present in the interpleader action. *First Tennessee National*

*Bank v. Federal Deposit Ins. Corp.,* 421 F.Supp. 35 (E.D.Tenn.S.D.1976).

the result exceeds the traditional notion of the interpleader action. My research discloses that the majority of interpleader actions reported stem from tort cases wherein an insurance company responsible for distributing the proceeds of an insurance policy interpleads the various victim/claimants.

> If a procedural rule such as the one of interpleader had to answer only for the typical case, most discussions . . . would be [mere] exercises. Yet life heaves up atypical situations, and from them stem atypical cases about which something has to be done. The issue then is not whether the rule is adequate for ordinary cases, but whether it is supple enough and precise enough to afford fair guidance for disposition of the extraordinary case.

Hazard & Moskovitz, "An Historical and Critical Analysis of Interpleader," 52 Cal.L. Rev. 706 (1964). Examples of courts' willingness to consider utilization of the combined procedures of interpleader and cross-claims can be found in *First Tennessee National Bank v. Federal Deposit Ins. Corp.*, *supra*, at 37; *First National Bank of Cincinnati v. Pepper*, 454 F.2d 626 (2d Cir. 1972), and *Jefferson Standard Insurance Co. v. Craven, supra.* Practical considerations of manageability and fairness to litigants have played a part in bringing some courts to the conclusion that while ancillary jurisdiction exists over cross-claims in an interpleader action, the court's discretion will be exercised to refuse to allow cross-claims to be entertained or to exceed the scope of the res. *Bache & Co. v. Roland*, 375 F.Supp. 989 (S.D.N.Y.1974) (summary judgment having been previously rendered on an unopposed motion in favor of one claimant, the court dismissed cross-claims among remaining parties); *Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1142 (8th Cir. 1976) (refusing to permit an "in personam" cross-claim to be asserted against a party brought in to the statutory interpleader action by virtue of the nationwide service of process provision). See also Professor Chafee's consideration of equitable notions in a variety of interpleader contexts in "Broadening the Second Stage of Federal Interpleader," 56 Harvard L.Rev. 541, 949 (1943).

In allowing the "second stage" of this interpleader to be broadened, I am persuaded that judicial economy will result. The Cuban parties' allegations of fraud, etc., are their basis for their claim to the interpleaded funds. Should it be shown at any time that the "fraud" alleged in the cross-claims to involve Fessler, McDonald and Paul is not one and the same, it will at that time be appropriate to sever or dismiss portions of the cross-claim.

The Court in this action has previously been faced with questions as to the scope of proper discovery. Rule 26 of the Federal Rule of Civil Procedure permits discovery to address any matter which is relevant to the subject matter of the action and which is not privileged. It is my belief that the scope of discovery will not be unreasonably expanded by my ruling herein. As the Cuban parties must prove their allegations of fraud or breach of contract, etc. in order to prove their entitlement to the fund invested with Dean Witter, even without their cross-claims against Fessler, Paul and McDonald, depositions and interrogatories would address these common topics. The addition of the cross-claims merely serves to make unnecessary the duplication of effort and paper in the Cuban parties' attempts to prove their case against the alleged wrongdoers.

Accordingly, for the reasons stated above, I order that the default entered against McDonald be set aside for good cause shown and that the motions by Paul and McDonald to dismiss the cross-claims against them be denied. Responsive pleading by Paul and McDonald to the cross-claim directed against them shall be filed with the Court within 10 days of the filing date of this order.